# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | |
|---|---|
| 360 PAINTING, LLC,<br><br>         *Plaintiff,*<br>   v.<br><br>GLENN A. MISIPH, *et al.*,<br><br>         *Defendants.* | CASE NO. 3:22-CV-00056<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

  This case arises out of an alleged breach of a franchise agreement between franchisor, Plaintiff 360 Painting, LLC and its franchisee. Defendant Glenn A. Misiph operated a 360 Painting franchise through the Defendant entity, AASK Services, LLC. Plaintiff brings claims of breach of contract, unjust enrichment, quantum meruit, tortious interference with contract, violation of state and federal trade secret laws, state statutory business conspiracy, and common law conspiracy. Plaintiff's suit will be dismissed it its entirety. The contract claim and quasi-contract claims will be dismissed as a matter of law because of an express contract foreclosing Plaintiff's right to recovery. The remaining claims will be dismissed for failure to state a claim.

## I. Background

  The following facts are alleged in Plaintiff's First Amended Complaint and assumed true for purposes of resolving this motion. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016) (explaining standard of review). Plaintiff has established and developed a network of independently owned and operated franchised businesses that provide a full range of residential and light commercial painting and decorating services. Dkt. 11 ("First Amend. Compl.") ¶ 8.

On May 15, 2018, Plaintiff and Misiph entered into a franchise agreement ("Franchise Agreement") which granted Misiph the right to operate a 360 Painting franchise and a license to use the registered 360 Painting names and marks for an initial term of ten years. *Id*. ¶ 9. The Franchise Agreement governed their rights and responsibilities towards one another with respect to the painting business system. *Id*. Misiph and Plaintiff signed the Franchise Agreement, including its exhibits. Dkt. 11-1 ("Exhibit C") at 45, C-1, C-2, C-4, C-5, C-6. A written Exhibit attached to the Franchise Agreement stated that the "Franchisee's legal organization" was an "Individual for now. Change to Corporation upon receipt." *Id*. at C-5. Misiph signed that Exhibit.

The Franchise Agreement contained a number of standard provisions governing the parties' obligations upon termination or expiration of the Agreement. *Id*. at 33, 36. Specifically, Section 23.2 (iii) provided that the Franchisee would be responsible for certain types of fees. That Section stated:

> **23.2 Obligations upon Termination or Expiration.** Upon the expiration or termination of this Agreement . . . Franchisee shall:
>
> . . .
>
> (iii) pay all sums owing to Franchisor which may include, but not be limited to, all damages, costs and expenses, including reasonable attorneys' fees, unpaid Royalty Fees, and any other amounts due to Franchisor.

In addition, Section 22.1 (ii) more broadly covered the Franchisee's obligations upon termination of the Franchise Agreement. That Section stated:

> **22.1 Termination by Franchisee.**
>
> . . .
>
> (ii) If Franchisee terminates this Agreement pursuant to this Section, all post-termination obligations of Franchisee described herein shall not be waived but shall be strictly adhered to by Franchisee, and Franchisee shall remain obligated to honor all other obligations set forth in this Agreement that, by their terms, apply subsequent to termination of the franchise relationship, including the payment of all outstanding Royalties and other

> fees due hereunder and compliance with the post-termination covenant not to compete.

Additionally, Section 23.1 addressed liquidated damages resulting from a termination of the Franchise Agreement. *Id.* at 36.

However, at the same time the parties signed the Franchise Agreement, they also executed an addendum ("Addendum") to the Franchise Agreement which directly negated the above-mentioned sections and made those damages unavailable upon termination. That Addendum stated:

> 1. Under Section 23 EFFECT AND OBLIGATIONS UPON TERMINATION, SECTION 23.1 of the Agreement shall be deleted in its entirety and of no force or effect. Also waive any obligation to pay unpaid and/or future royalty fees, national marketing fund contribution and/or other fees owed post-termination in Sections 22.1 (ii) and 23 (iii).

*Id*. at C-6. On or around May 23, 2018, Misiph filed a Certification of Organization for AASK, a limited liability company formed in the Commonwealth of Massachusetts. Dkt. 11 ¶ 11. In describing the "general character of the business," Misiph stated that:

> The business will operate as a franchisee, under a franchise agreement with 360 Painting, LLC. The business provides a full range of painting and decorating services, for both exterior and interior portions of residences and commercial buildings using equipment, tools, materials, methods, procedures, and the quality standards as specified by the franchisor 360 Painting, LLC.

*Id*. Misiph operated his 360 Painting franchise through his entity, AASK, from May 2018 until September 26, 2022. *Id*. ¶¶ 12, 18.

Plaintiff alleges that in early 2022, Misiph began communicating with nonparty Robert Sterling—a former 360 Painting franchisee. Dkt. 11 ¶ 13. Mr. Sterling operated a 360 Painting franchise in Illinois from August 2018 to July 2019. *Id*. Plaintiff also alleges that it terminated Sterling's franchise agreement when Plaintiff discovered that Sterling had been intentionally under-reporting gross sales figures by over $100,000. *Id*. Plaintiff contends, on information and belief, that Misiph and Sterling agreed to disparage Plaintiff through: 1) public distribution of

3

false and derogatory information about Plaintiff and Paul Flick, its owner, on Facebook; 2) Misiph seeking to terminate his Franchise Agreement and later operate a competing business that was based on Plaintiff's intellectual property but would not pay royalties or other fees; and 3) targeting contacts to individual franchisees of 360 Painting "to share with them false and derogatory allegations contained in Misiph's lawsuit" and Sterling's legal filings. *Id.* ¶ 14.

In addition, Plaintiff alleges that in August 2022, Misiph established a Facebook group using Plaintiff's marks, logos, and other intellectual property subject to the Franchise Agreement.[1] *Id.* ¶ 15. According to Plaintiff, the Facebook account was used to post content that was reasonably expected to materially impair the goodwill associated with Plaintiff. *Id.* ¶ 16. Additionally, Misiph allegedly contacted operating franchisees as well as Mr. Flick's business associates and personal friends to share "false and derogatory information intended to cause [other franchisees] to breach their franchise agreements with 360 Painting." *Id.* ¶ 17.

According to Plaintiff, Misiph's assignment of the license he received under the Franchise Agreement to AASK was done without permission and constituted a material breach of the Franchise Agreement. Other such alleged material breaches included Misiph's formation of the Facebook group using Plaintiff's marks, his posts on Facebook; and his alleged efforts to contact Mr. Flick's business associates, personal friends, and operating franchisees to share false and derogatory information intended to cause them to breach their franchise agreements with Plaintiff. *Id.* Plaintiff asserts that these events led it to terminate the Franchise Agreement on September 26, 2022. *Id.* ¶ 18.

---

[1] Sections 15.2(i), 15.2(ii), and 15.3 of the Agreement prohibit the unauthorized use of marks or the creation of any website containing the marks or anything similar to "360 Painting."

Plaintiff filed suit against Defendants, raising eight claims. These include breach of contract, unjust enrichment, quantum meruit, tortious interference with contract, violation of state and federal trade secret laws, state statutory business conspiracy, and common law conspiracy. Defendants seek dismissal of all counts pursuant to Rule 12(b)(6). The Court heard argument on the motion, and it is ripe for disposition.

## II. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The purpose of a Rule 12(b)(6) motion is to "test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King*, 825 F.3d at 214 (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999)). "Thus, when considering a motion to dismiss, a court must consider the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Bing v. Brivo Systems, LLC*, 959 F.3d 605, 616 (4th Cir. 2020). Nevertheless, only facts can render a claim for relief plausible. "[F]ormulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor is it sufficient for a plaintiff to plead facts merely consistent with liability. The plaintiff must plead enough factual content to nudge a claim across the border from mere possibility to plausibility. *Id.* at 570. *See also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

## III. Analysis

### A. Plaintiff Fails to State a Sufficient Breach of Contract Claim.

To support a sufficient breach of contract claim, there must be: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff cause by the breach of obligation. *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004).

In Count I of Plaintiff's First Amended Complaint, Plaintiff alleges that Misiph breached the Franchise Agreement. As a result, Plaintiff alleges it suffered damages arising from Misiph's failure to pay contractually due minimum royalties, technology fees, and contract center fees in the amount of $131,462.00. Dkt. 11 ¶¶ 20, 25. In the Complaint, Plaintiff broke down the amount due in each category, specifically $29,386.00 in royalties, $37,856.00 in technology fees, and $64,220.00 in contract center fees, totaling $131,462.00. *Id*. However, this claim to damages fails to recognize the executed Addendum attached to the Franchise Agreement, which both Plaintiff and Misiph signed. Dkt. 11-1 at C-6. The Addendum specifically forecloses Plaintiff's right to each of the categories of damages sought in Count I.[2] By contractually waiving its right to recover these damages, Plaintiff cannot claim to have suffered any damages by Misiph's alleged breach of the Franchise Agreement. In both oral argument and in the Complaint, Plaintiff's counsel failed to allege any facts that, taken as true, would show entitlement to relief apart from the recovery that was waived through the Addendum. Dkt. 24 at 12–15 (Hr'g Tr.).[3]

---

[2] The language in the Addendum states that the parties will, "Waive any obligation to pay unpaid and/or future royalty fees, national marketing fund contribution and/or other fees owed post-termination in Sections 22.1 (ii) and 23 (iii)."

[3] At oral argument the Plaintiff made the argument in passing that damages could be recoverable through a wholly separate provision of the Franchise Agreement—specifically, a noncompete provision. That argument similarly fails because it extends beyond the claims set forth in the Amended Complaint itself, which specifies the particular contractual provisions alleged to be breached, and the noncompete provision is not listed. *See* Am. Compl. ¶ 24. Further still, Plaintiff has failed to include in the Amended Complaint any factual allegations that, taken as true, would establish Defendants violated a noncompete provision established in the Franchise Agreement. *See* Dkt. 11-1 at 30–31 (Franchise Agreement § 21). Plaintiff also contended at oral argument that the Addendum would not foreclose Plaintiff's ability to seek pre-termination damages. Dkt. 24 at 14–15 (Hr'g Tr.). That argument is meritless because Plaintiff has not sought pre-termination damages. Am. Compl. ¶¶ 20, 25.

However, Plaintiff argues that the Addendum is unenforceable for two reasons. Dkt. 18 (Pl. Br. Opp. MTD) at 2–4.

### i. Scrivener's Error

First, Plaintiff contends that the Addendum is not dispositive as to the availability of money damages because it refers to a non-existent section in the Franchise Agreement— section 23 (iii). *Id*. at 2. The Court disagrees. When read in context, this is a clear typographical error and the meaning of the Addendum and its relation to Section 23.2 (iii) of the Franchise Agreement is unambiguous.

The correction of a scrivener's error is a court-sanctioned action to reform a contract or other document. *Westgate at Williamsburg Condo. Ass'n v. Philip Richardson Co.*, 621 S.E.2d 114, 118 (Va. 2005). It is well settled that a court is not permitted to rewrite or add terms to a document when they are not included by the parties. *Id*. However, a scrivener's error is an exception to this general rule because scrivener's errors "are difficult to prevent, and . . . no useful social purpose is served by enforcing . . . mistaken terms. *Id*. (quoting *S.T.S. Transport Service, Inc. v. Volvo White Truck Corp.*, 766 F.2d 1089, 1093 (7th Cir. 1985)). Whether a scrivener's error exists is a question of law, *id*. at 574, and can by established without parol evidence, *id*. at 576.

In the Addendum the parties waived all obligations found in "Section 23 (iii)" of the Franchise Agreement.[4] However, "Section 23 (iii)" of the Franchise Agreement does not exist. Instead, there is a section 23.**2** (iii). Dkt. 11-1 at 36 (emphasis added). Section 23 only includes one subsection (iii). It is Section 23.**2** (iii). *Id*. Further, Section 23.2 (iii) is the only subsection of

---

[4] "Waive any obligation to pay unpaid and/or future royalty fees, national marketing fund contribution and/or other fees owed post-termination in Sections 22.1 (ii) and 23 (iii)."

Section 23 that specifically addresses the payment of unpaid royalty fees and other damages, costs, and expenses upon termination or expiration—the very language the Addendum uses. *Id*. The parties plainly intended to write 23.2 (iii) and this is further supported by the fact that the correctly typed subsection 22.1 (ii) in the Addendum addresses future royalties and other fees as potential damages. *Id*. at 33. Because the Addendum contains a clear scrivener's error, and it was the unambiguous intent of the parties to refer to 23.2 (iii) rather than 23 (iii), Plaintiff's claim for damages was waived through the signing of the Addendum.[5]

### ii. Assignment Error

Plaintiff makes one more last-ditch effort to avoid the consequences of the signed Addendum. Plaintiff contends that because Misiph signed the Addendum in his individual capacity, rather than his representational capacity as AASK, the Addendum is only effective as to *Misiph*—not AASK. Dkt. 18 at 3–4. This argument fares no better.

Plaintiff relies on Section 19.2 of the Franchise Agreement to support this contention. Section 19.2 states that a "Franchisee shall not subfranchise, sell, assign, transfer, merge, convey, or encumber, in whole or in part . . . the Business, the Vehicles, this Agreement or any of its rights or obligations hereunder, . . . without the prior express written consent of the Franchisor." Dkt. 11-1 at 26. When Misiph signed the Franchise Agreement, he signed as an "Individual for now. Change to Corporation upon receipt." *Id*. at C-5. Therefore, Plaintiff was on notice that Misiph would not remain the franchisee in his individual capacity, but rather that the

---

[5] To the extent Plaintiff argues that the Addendum referred to 23.**3** instead of 23.2 (iii), the Court disagrees with that interpretation of the Addendum, and in any event, it would be immaterial. The plain language of the Addendum clearly refers to 23.2 (iii). And the effect of the Addendum would still preclude recovery of damages even if Plaintiff were correct (and it is not), that the Addendum referred to 23.3.

"Franchisee" would "change to [a] corporation."[6] *Id.* At no point did Misiph ever sign the Franchise Agreement or any attachment to the Franchise Agreement as AASK. *Id*. at 45, C-1, C-2, C-4, C-5, C-6. Each time he signed the agreement he signed in is individual capacity as Misiph. One week after Misiph signed the Franchise Agreement, notifying Plaintiff that he would change to a corporation upon receipt, Misiph created AASK and began operating under that entity. Dkt. 11 ¶ 11. No sale, transfer or assignment took place between Misiph and AASK, nor did the Franchise Agreement require it. Rather, Misiph merely began doing business under the new entity AASK Services, LLC, as the signed Exhibit to the Franchise Agreement contemplates. Plaintiff's contention that the Addendum does not apply to AASK because it was only signed by Misiph lacks merit. The Court will therefore grant Defendants' motion to dismiss Count I of the First Amended Complaint.

### B. Plaintiff's Quasi-Contract Claims Fail Due to the Existence of an Express Contract Covering the Same Subject Matter.

Plaintiff contends that if the Franchise Agreement is found to be void or if Plaintiff is otherwise precluded from recovering under Count I, Plaintiff should be able to plead in the alternative under the equitable theories of unjust enrichment[7] and quantum meruit.[8] Dkt. 11 ¶ 27. These claims also fail.

---

[6] Although AASK is an LLC rather than a corporation, there are no facts that would indicate that this is a material difference. 360 Painting was properly put on notice that Misiph would not remain as the franchisee in his individual capacity.

[7] To state a cause of action for unjust enrichment, a plaintiff must allege that: (1) it conferred a benefit on the defendant; (2) the defendant knew of the benefit and should reasonably have expected to repay the plaintiff; and (3) the defendant accepted or retained the benefit without paying for its value. *Schmidt v. Household Fin. Corp., II*, 661 S.E.2d 834, 838 (Va. 2008).

[8] To state a cause of action for quantum meruit, a plaintiff must allege that (1) the parties contracted for work to be done but they did not agree on the price; (2) the compensation mentioned is too indefinite; (3) there is a misunderstanding as to the price to be paid, or (4) in some circumstances, the contract is void and of no effect. *Fessler v. Int'l Bus. Mach. Corp.*, 959

The Supreme Court of Virginia has consistently held that the existence of an express contract covering the same subject matter of the dispute and defining the rights of the parties necessarily precludes the existence of an implied contract of a different nature containing the same subject matter. *Southern Biscuit Co. v. Lloyd*, 6 S.E.2d 601, 606 (Va. 1940); *CGI Fed. Inc. v. FCi Fed., Inc.*, 814 S.E.2d 183, 190 (Va. 2018). To be sure, unjust enrichment claims are not precluded in some circumstances where valuable performance has been rendered and the governing contract is found to be invalid, subject to avoidance, or otherwise ineffective to regulate the parties' obligations. *James G. Davis Constr. Corp. v. FTJ, Inc.*, 841 S.E.2d 642, 648 (Va. 2020). Here, however, the Franchise Agreement and attached Addendum comprise of a valid enforceable contract between the parties. And "[i]t is only in the absence of . . . an enforceable contract between parties, that the law (whether at law or in equity) will, from circumstances imply a contract between them." *Ellis & Myers Lumber Co. v. Hubbard*, 96 S.E. 754, 760 (Va. 1918).

The attached Addendum clearly forecloses the Plaintiff's right to damages sought in Counts II and III. The law does not allow the interposition of an implied contract of a different nature when an express contract exists. At bottom, Plaintiff cannot circumvent its express contractual agreement, in which Plaintiff waived its right to damages, by allowing it to plead under the theory of an implied contract. Thus, the Court will grant Defendants' motion to dismiss Count II and Count III of the First Amended Complaint.

---

F.3d 146, 157 (4th Cir. 2020) (citing originally *Marine Dev. Corp. v. Rodak*, 300 S.E.2d 763, 765 (Va. 1983)).

### C. Plaintiff Fails to Sufficiently Plead a Tortious Interference with Contract Claim.

To support a sufficient claim for tortious interference with contract under Virginia law there must be: (1) existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy; (3) intentional interference including or causing a breach or termination of the relationship or expectancy; and (4) resultant damages to the party whose relationship or expectancy has been disrupted. *Schaecher v. Boufaalut*, 772 S.E.2d 589, 602 (Va. 2015). Plaintiff fails to state a plausible claim for tortious interference with contract because Plaintiff does not allege facts that, taken as true, would satisfy the third or fourth elements of the claim.

Plaintiff alleges that Defendants sought to induce Plaintiff's other business partners to breach or terminate their contractual agreements with Plaintiff. Dkt. 11 ¶ 38. However, the First Amended Complaint only makes the conclusory allegation that the Defendants provided "false and derogatory misinformation about 360 Painting" to Plaintiff's franchisees and other business partners. *Id*. ¶ 39. Plaintiff points to a potentially derogatory Facebook message allegedly sent on October 24, 2022, but fails to allege anything about *the content* of the message or how it interfered with any contract of 360 Painting. *Id*. ¶ 40.

Notably, Plaintiff does not allege any specific false and derogatory statements by Defendants or that any specific contracts were breached or terminated as a result of the Defendants' intentional interference through false and derogatory statements. Conclusory and speculative allegations are insufficient to withstand a motion to dismiss. As the Supreme Court has stated, to withstand a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face. *Twombly*, 550 U.S. at 570.

This Count also fails because the First Amended Complaint does not allege that any specific 360 Painting contracts or expectancies with others were breached or terminated as a result of Defendants' purported interference. The third element of this claim requires, "intentional interference including or causing a breach or termination of the relationship or expectancy." *Schaecher*, 772 S.E.2d at 602. Because Plaintiff has not alleged that any specific breach or termination has taken place, the third element of tortious interference has not been properly pled by Plaintiff. Further still, the fourth element requires "resultant damages to the party whose relationship or expectancy has been disrupted." *Id*. The fourth element faces the same fate as the third. Just as Plaintiff failed to allege any specific breach or termination, it also failed to allege that any damages resulted from that breach or termination. For these reasons, the Court will grant Defendants' motion to dismiss Count IV of the Amended Complaint.

### D. Plaintiff Fails to Sufficiently Plead a Trade Secret Misappropriation Claim.

To state a claim under the Federal Defend Trade Secrets Act ("DTSA"), a plaintiff must allege that: (1) it owns a trade secret, (2) the trade secret was misappropriated; (3) the trade secret implicates interstate or foreign commerce. *Power Home Solar, LLC v. Sigora Solar, LLC*, No. 3:20-cv-42, 2021 WL 3856459, at *23 (W.D. Va. Aug. 30, 2021). Similarly, Virginia Uniform Trade Secrets Act ("VUTSA") requires a plaintiff to establish that: (1) the information in question constitutes a trade secret; and (2) the defendant's misappropriation of the trade secret. *Id*.

The Defendants argue that Plaintiff does not sufficiently allege what "trade secrets" were misappropriated by Defendants. The Court agrees.

The DTSA defines a "trade secret" as:

> [A]ll forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices,

12

>   formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>
>   (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
>   (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3).

>   VUTSA defines a trade secret as:
>
>   [I]nformation, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process that:
>
>   1. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
>
>   2. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Va. Code Ann. § 59.1-336 (2020).

The "trade secrets" Plaintiff alleges the Defendants misappropriated include: customer lists, pricing information, proprietary formulas, business leads, marketing materials, business and operations manuals, financial information, strategic marketing research, sales techniques, business methods, and other confidential and proprietary information. Dkt. 11 ¶ 52. Indeed, the list alleged by Plaintiff is remarkably similar to the list that the court found insufficient in *Power Home Solar, LLC v. Sigora Solar, LLC*, in which it held that merely conclusory labeling of information as trade secrets was inadequate for purposes of Rule 12(b)(6). *Power Home Solar*, 2021 WL 3856459, at *27.

In *Power Home Solar*, the compliant alleged that the misappropriated trade secrets included: "[plaintiff's] proprietary training, . . . practices, methods, techniques, and pricing models, confidential customer database, including the entire [its] SalesForce database, and [its] proprietary quote software, confidential sales memos, sales training manuals, and information concerning [its] relationship with its suppliers and vendors." *Id*. at *26. The court held that this was not enough to survive a Rule 12(b)(6) motion because a plaintiff "seeking statutory protection must provide specific factual detail about the unique nature of . . . materials [alleged to be trade secrets], including how they were developed and why the underlying customer information is not otherwise readily ascertainable by their competitors in the relevant market." *Id*. at *26-27.

So too here, Plaintiff has failed to provide any factual allegations that, taken as true, would establish the unique nature of its customer lists or marketing and business practices. Nor does the First Amended Complaint mention how the alleged trade secrets were developed and why they are not otherwise ascertainable by others in the market. Plaintiff also fails to include how the alleged trade secrets were ascertained and protected. Ultimately, the complaint contains only legal conclusions, not facts.

In its Brief in Opposition, Plaintiff argues that in determining what qualifies as a "trade secret" the Court should look to the express language of the Franchise Agreement. Dkt. 18 at 10. The relevant language states: "All information which comprises the 360 Painting System including the information and data in the Operations Manual will be presumed to be confidential information of Franchisor, along with the identity and contact information of any customers of the Business." Dkt. 11-1 at 32. However, this language fares no better in providing any specific factual detail which is required to survive a 12(b)(6) motion. It merely recites the same generic

14

boilerplate, unadorned by any "factual detail about the unique nature of . . . materials [alleged to be trade secrets], including how they were developed and why the underlying customer information is not otherwise readily ascertainable by their competitors in the relevant market." *Power Home Solar*, 2021 WL 3856459, at *26–27. Merely stating that "all information which comprises the 360 Painting System . . . will be presumed to be confidential" is not enough to establish that any specific business trade secrets exist and certainly does not meet the standard that trade secrets must be pled with specificity.

In addition, Plaintiff contends that Misiph disclosed trade secrets to AASK when Misiph began operating his franchise through the entity AASK Services, LLC. As discussed above, Plaintiff contends that there was never a proper assignment to AASK, meaning that it was not a party to the Franchise Agreement. As a result, the Plaintiff alleges that Misiph's disclosure of the business's "trade secrets" to AASK constitutes a misappropriation. The Court has already rejected that argument. Misiph operated under the entity AASK nearly the entire life of the Franchise Agreement. The Franchise Agreement entitled AASK to the information Misiph received from Plaintiff. For the reasons stated above, the Court will dismiss Counts V and VI.

E.  **Plaintiff Fails to Sufficiently Plead a Claim of Statutory Business Conspiracy or Common Law Conspiracy.**

Finally, Plaintiff brings statutory business and common claims against Defendants. Plaintiff alleges that Misiph and nonparty Robert Sterling are liable for violating Va. Code § 18.2-499, which states in relevant part: "Any two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business, or profession by any means whatever" are

15

liable for committing a business conspiracy.[9] Likewise, "[a] common law conspiracy consists of two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means." *Commercial Business Sys. v. Bellsouth Servs.*, 453 S.E.2d 261, 267 (Va. 1995). As a consequence of Misiph's alleged conspiracy, Plaintiff asserts that it suffered the following harm: termination of the fees Misiph paid under the Franchise Agreement, lost business opportunities from potential franchisees, and damage to the company's reputation. Dkt. 11 ¶ 60.

Ultimately, Plaintiff must prove that Misiph and Mr. Sterling "combined together to effect a preconceived plan and unity of design and purpose." *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003) (internal quotation marks omitted). To survive a motion to dismiss, a plaintiff "must at least plead the requisite concert of action and unity of purpose," and must do so "in more than mere conclusory language," *Id.* (internal quotation marks omitted). *See Schlegel v. Bank of Amer., N.A.*, 505 F. Supp. 2d 321, 325–26 (W.D. Va. 2007). "[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *See Twombly*, 550 U.S. at 557. Allegations that two parties "conspired" together "get[] the complaint close to stating a claim, but without some further factual enhancement [they] stop short of the line between possibility and plausibility of 'entitle[ment] to relief.'" *Id.* at 557; *id.* at 556–57. A claim for civil conspiracy fails if the plaintiff "fails to allege with any specificity the persons who agreed to the alleged conspiracy, the specific communications amongst the conspirators, or the manner in which any

---

[9] Section 18.2-500 creates a private cause of action for parties injured under this statute, permitting them to recover treble damages.

such communications were made." *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011).

Plaintiff alleges that Misiph and Mr. Sterling "combined to cause willful and/or malicious injury to Plaintiff in its reputation, trade, business, or profession." Dkt. 11 ¶ 60. This is a mere recitation of a legal element of a conspiracy claim, and is nothing more than conclusory. Plaintiff has not alleged any specific facts that, taken as true, would establish how Defendants' conduct satisfied that element.[10] The Complaint has not alleged any specific communications amongst Misiph and Sterling, or the manner in which any such communications were made. The standard requires more than mere conclusory language, but Plaintiff has failed to provide such language.

Furthermore, Plaintiff must plead business conspiracy with particularity, which it has failed to do so here. *See Gov't Employees Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 706 (E.D. Va. 2004). ("Business conspiracy, like fraud, must be plead with particularity, and with more than mere conclusory language. The heightened pleading standard prevents every business dispute [from] becoming a business conspiracy claim." (internal quotation marks omitted)). The circumstances to be pled with particularity are "the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Livia Props., LLC v. Jones Lang Lassalle Ams., Inc*, No. 5:14-cv-53, 2015 WL 4711585, at *4 (W.D. Va. Aug. 7, 2015) (citation omitted). Without more factual enhancement, Plaintiff cannot make out a claim for common law or statutory business conspiracy. The Court accordingly dismisses Counts VII and VIII.

---

[10] Regarding Plaintiff's common law conspiracy claim, Plaintiff argues that Defendants' tortious interference with contract and tortuous interference with business expectancy each constitute the requisite "unlawful act" for common law conspiracy. However, this argument fails because the Court has already rejected the argument that Defendants tortiously interfered with Plaintiff's contracts or expectancies.

17

**F. Conclusion**

For the reasons stated above, the Defendants' Motion to Dismiss will be granted.

The Clerk of Court is directed to send this Memorandum Opinion to the parties.

Entered this 13th day of July, 2023.

                                                         NORMAN K. MOON
                                                         SENIOR UNITED STATES DISTRICT JUDGE